DEER-GLEN ESTATES, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. BOARD OF ADJUSTMENT AND APPEAL OF THE BOROUGH OF FORT LEE, AND JAMES S. WOOD, ETC., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1956—Decided March 7, 1956.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. William V. Breslin* argued the cause for appellants.

*Mr. Samuel J. Davidson* argued the cause for respondent (*Messrs. DeFazio, Davidson & DeFazio*, attorneys).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. This appeal seeks to review a judgment entered in the Law Division, in an action in lieu of prerogative writ, directing the building inspector of the Borough of Fort Lee to issue a certificate of occupancy for a dwelling presently erected on plaintiff's premises. The trial

judge filed no opinion, so that we are without any guide in determining on what basis he acted. Apparently the trial court was convinced that plaintiff-respondent had made out a case of undue hardship under the Zoning Act, *N. J. S. A.* 40:55–39(c).

Plaintiff, a builder, is the owner of premises fronting 75 feet on the south side of Claremont Avenue in Fort Lee, and extending back about 117 feet on the easterly boundary and 107 feet on the westerly boundary to an irregular rear line. The lot is roughly trapezoidal, the side lines converging as they run south from Claremont Avenue, so that the lot is somewhat narrower at the rear than it is in front. Plaintiff applied to the acting building inspector of the borough for a permit to build a residence 52' 4" wide centered upon the lot in question, and submitted a plot plan in support of the application. This plot plan showed side lines of eight feet on the east and ten feet on the west of the house, the measurements being made near the rear of the proposed structure. The local zoning ordinance provides that residences shall have two side yards, one not less than ten feet wide and the other not less than eight. Plaintiff's plot plan met this requirement and the building permit duly issued.

After construction had begun, plaintiff modified its building plan by reducing the width of the dwelling three feet on the westerly side, but did not file an amended building plan or plot plan with the acting building inspector. Plaintiff had substantially completed the dwelling when, on July 28, 1955, it applied to the acting building inspector for a certificate of occupancy. With the application it filed a location survey of the building. This survey showed that the southwest corner of the dwelling was only 9' 1" from the westerly boundary line, and the entire easterly line 7' 11½" from the easterly boundary, thereby revealing side yard violations of 11" and of ½", respectively. The acting building inspector refused to issue a certificate of occupancy because the building violated the side yard provisions of the zoning ordinance. Plaintiff thereupon appealed to the local board of adjustment and appeals for a variance, invoking all four subsec-

tions of *N. J. S. A.* 40:55–39. It is clear, however, that the owner-builder relied upon *N. J. S. A.* 40:55–39(c) in asking for a variance.

Plaintiff's position at the board hearing was that the architect had made a mistake in laying out the building because of the irregular dimensions of the lot and its topographical condition. Our reading of the testimony does not make clear just what connection there is between the claimed lot conditions and the alleged mistake. There was no evidence of unusual topography; the lot on which the building stands would appear to be flat terrain. There was plenty of room within the trapezoidal outline of the lot to erect a dwelling which would not violate side yard restrictions. Indeed, the very process of measurement which determined the side yard deficiencies of the present building would have enabled an architect and a builder of plaintiff's experience to lay out the proposed dwelling in such fashion that it would not violate the ordinance requirements.

After taking testimony and considering the matter, the zoning board declined to grant relief, stating that it was acting on the basis of a letter from the borough attorney and because there was no showing of hardship. Plaintiff then filed a complaint in lieu of prerogative writ in the Law Division in which it was again claimed that the dwelling was erected "because of an error and miscalculation caused by the peculiar shape of the lot in question," and that the side yard violations "are insignificant and would not affect the general plan of the area." After answer filed, plaintiff moved for summary judgment based on the pleadings and the record taken before the zoning board. The court, as noted above, directed the acting building inspector to issue a certificate of occupancy for the dwelling which plaintiff had built. This appeal followed.

■■ We should first observe that when plaintiff came before the zoning board, its obligation was to indicate under what subdivision of *N. J. S. A.* 40:55–39 it was claiming relief. Not only were defendants entitled to know what contentions they were going to be called upon to meet, but

the board itself should have been told on what ground its jurisdiction was invoked. Obviously, the appeal before the zoning board was not one from any alleged error by the acting building inspector. Plaintiff has never denied the existence of the side yard violations, and so the acting building inspector had no discretion to do anything but follow the requirements of the zoning ordinance and refuse the requested certificate of occupancy. The inspector was an administrative official performing a purely ministerial act, exercising no discretion. Had he issued the certificate of occupancy in the face of an outstanding violation of the side yard provisions of the ordinance, his action would have been utterly void and subject to attack. *Cf. Garrou v. Teaneck Tryon Co.*, 11 *N. J.* 294, 306 (1953). Plaintiff could not, therefore, have been appealing to the zoning board under *N. J. S. A.* 40:55–39(*a*), which may be resorted to when it is alleged that there was error in any order, requirement, decision or refusal made by an administrative official or agency based on or made in the enforcement of the local zoning ordinance. Subsection (*b*) of *N. J. S. A.* 40:55–39 obviously had no application in the circumstances. Nor did subsection (*d*), where the zoning board may recommend "in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use." The dwelling built by plaintiff was one permitted in a residential zone.

Accordingly, as we have already indicated, the only standing plaintiff had before the zoning board was under subsection (*c*) of the statute, which refers to situations where by reason of some exceptional physical condition or situation of the property, the strict application of the ordinance would result "in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon" the owner of the property. In order to support the grant of a variance by a zoning board there must be a finding of unnecessary hardship to the individual landowner. 165 *Augusta Street, Inc. v. Collins*, 9 *N. J.* 259, 263 (1952).

■ There is not the slightest showing in the present case that there was anything about the premises in question that would have made it difficult for or imposed an exceptional and undue hardship upon the builder-owner to have complied with the side yard requirements. The hardship of which plaintiff now complains is one brought about by its own act or omission. The lot itself conformed with the zoning ordinance requirements as to size and footage. Its shape is not exceptional—as plaintiff would have us believe—in the sense that a building could not be erected thereon without the necessity of applying for a variance. The hardship of which the owner complains is one that was self-imposed or self-created, and not one imposed by the terms of the zoning ordinance, as is contemplated by *N. J. S. A.* 40:55–39(*c*). Plaintiff got itself into trouble through sheer negligence, accompanied by a flagrant violation of the zoning ordinance requirements. It had no right to build on the basis of a plot plan different from that which it filed with the acting building inspector when it sought a building permit. As stated in 8 *McQuillin, Municipal Corporations* (*3d ed.* 1950), § 25.168, *p.* 296:

"The practical difficulty or unnecessary hardship, essential to a variance, is not difficulty or hardship which would have existed in the absence of the ordinance and which is not occasioned by it. Nor, in general, is it self-created hardship, viz., that arising from the conduct, acts or omissions of the owner of property and not directly consequent upon zoning. * * *"

■ The "undue hardship" provision of *N. J. S. A.* 40:55–39(*c*) can have no application where the owner is himself responsible for the hardship. See *Protomastro v. Board of Adjustment of Hoboken,* 3 *N. J.* 494, 500 (1950); *Leimann v. Board of Adjustment of Cranford Township,* 9 *N. J.* 336, 342–3 (1952); *Dolan v. DeCapua,* 16 *N. J.* 599, 610 (1954); *Peterson v. Board of Adjustment of Montclair,* 7 *N. J. Super.* 282 (*App. Div.* 1950); *Giordano v. Dumont,* 137 *N. J. L.* 740, 742 (*E. & A.* 1948).

The last paragraph of *N. J. S. A.* 40:55–39 provides that

"No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zoning plan and zoning ordinance."

Plaintiff claims that the side yard violations present on his improved lot will not substantially impair the purpose of the zoning ordinance or be detrimental to the public good. We need not concern ourselves with the half-inch deficiency in the eastern side yard—this is said to be due to an innocent mistake of the mason in constructing the foundation—but can it be said that the municipality may not object to the deficiency of almost one foot on the eastern side of the house? If the latter violation is permitted, where will the line be drawn? A municipality need not overlook, nor will we require it to overlook, such a deficiency merely because it arose through the negligence or inattention of the owner and his employees. A builder may not, after his structure is practically completed, come into the building inspector's office with a new plan, and request, belatedly, that a certificate of occupancy be issued because of an alleged mistake by the surveyor, architect, contractor, or any of their employees. To permit him to do so would open the door to unconscionable, if not fraudulent, conduct on the part of builders. "Mistake" would then become nothing more than a guise for evading the legal requirements of a zoning ordinance.

The citizens of Fort Lee have a right to rely on the valid provisions of their zoning ordinance, and have a right to demand its protection. *Borough of Cresskill v. Borough of Dumont*, 28 *N. J. Super.* 26, 42 (*App. Div.* 1953), affirmed 15 *N. J.* 238 (1954).

We should mention two matters which further indicate the weakness of plaintiff's position. Plaintiff owns the corner lot, fronting over 96 feet on Claremont Avenue, west of its premises and the 9' 11" side yard. As for the side yard on

the east side of the house, the testimony of the adjoining property owner shows that he claims a boundary line running on a course of N. 39° 01′ 30″ E. Plaintiff's survey shows this course to run N. 29° 10′ E. If the neighbor's course be the correct one, then it must necessarily form an acute angle to the east of plaintiff's course, the two sides of the angle meeting at a common point in the rear of these adjoining premises and opening out as they extend north toward Claremont Avenue. The space between would appear to give plaintiff the extra distance required for a legal side yard.

We agree with the determination of the board of adjustment and appeals that plaintiff did not show hardship. There was therefore no valid basis for reversing that determination, nor for directing the building inspector to issue a certificate of occupancy for a dwelling that did not conform with the side yard requirements of the zoning ordinance. The summary judgment of the Law Division must therefore be reversed.