585 A.2d 928

COMMERCIAL REALTY AND RESOURCES CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. FIRST ATLANTIC PROPERTIES CO. AND THE PLANNING BOARD OF THE TOWNSHIP OF NEPTUNE, DEFENDANTS–RESPONDENTS.

Argued October 9, 1990—Decided February 4, 1991.

. *Albert A. Zager* argued the cause for appellant (*Carton, Nary, Witt & Arvanitis,* attorneys; *James D. Carton, III,* on the brief).

*Peter J. Carton* argued the cause for respondent First Atlantic Properties Co. (*Crummy, Del Deo, Dolan, Griffinger &*

*Vecchione,* attorneys; *Peter J. Carton* and *Henry L. Kent–Smith,* on the brief).

*Frederick P. Niemann* argued the cause for respondent The Planning Board of the Township of Neptune.

*David J. Frizell* submitted a brief on behalf of *amici curiae,* David J. Frizell and Harry S. Pozycki, Jr. (*Frizell, Pozycki & Meiser,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

Since 1924, when the Legislature first authorized municipalities to adopt zoning ordinances, *L.* 1924, *c.* 146, municipal boards of adjustment have been empowered to grant variances from zoning regulations. Preserved in the Municipal Land Use Law (MLUL), *L.* 1975, *c.* 291, the variance power is currently codified in subsections c and d of *N.J.S.A.* 40:55D–70, which impose different standards to govern the grant of the discrete classes of variances authorized by the respective subsections. One of the significant distinctions between subsection c and d variances is that the latter can be authorized only by boards of adjustment, whereas municipal planning boards, in the course of approving subdivisions, site plans, or conditional uses, are empowered to grant subsection c-type variances. See *N.J.S.A.* 40:55D–60.

In this case the Neptune Planning Board, attempting to exercise that statutory authority, granted the application of respondent First Atlantic Properties Co. (First Atlantic) for site-plan approval of a five-story, forty-four-foot high hotel, concurrently granting respondent's appeal for a variance from the two-story, thirty-foot height limitations imposed by the Neptune Zoning Ordinance. Neptune, N.J., Zoning Ordinance § 3.1(A) (Jan. 31, 1977).

Plaintiff Commercial Realty and Resources Corp. (Commercial Realty), instituted this suit challenging the Planning Board's action. The Law Division set aside the Board's approv-

al, concluding that variances from zoning-ordinance height restrictions are cognizable only under subsection d of *N.J.S.A.* 40:55D–70, and hence beyond the authority of planning boards. In a reported opinion, 235 *N.J.Super.* 577, 563 *A.*2d 866 (1989), the Appellate Division reinstated the Board's approval of both the site plan and height variance. The Appellate Division concluded that in the absence of "clear evidence that the municipality * * * intended * * * [that] zoning board jurisdiction be construed to be exclusive," a municipal planning board is empowered to grant variances from height restrictions in conjunction with its site-plan-review authority. *Id.* at 592, 563 *A.*2d 866. The court also concluded that the Planning Board's determination to grant the variance was sustainable. *Id.* at 596, 563 *A.*2d 866.

We granted Commercial Realty's petition for certification, 118 *N.J.* 224, 570 *A.*2d 978 (1989).

I

First Atlantic contracted to purchase a 2.8–acre tract on State Highway 66 in Neptune Township, located in the light-industrial (1–L) zone, apparently the least restrictive of the six commercial-type zones established by the Township zoning ordinance. See Neptune, N.J. Zoning Ordinance § 3.1(A). Hotels were permitted uses in the 1–L zone, which imposed a general height limitation of two stories and thirty feet and a six-story, ninety-foot limitation on office buildings. Hotels were also permitted in the Commercial Service and Executive Service zones, commercial zones more restrictive than the 1–L zone, but in which the height limitation was six stories and ninety feet.

First Atlantic applied to the Township Planning Board for site-plan approval of its proposal to erect a five-story, forty-four-foot-high, 133–room hotel, to be operated by its parent company, Susse Chalet of New Hampshire. Simultaneously, First Atlantic sought variances from the 1–L zone height limitation of two stories and thirty feet. Although asserting that it

required no variance from the ordinance's parking requirements, contending that the 1.25 spaces per-room standard applicable to other commercial zones did not apply in the 1–L zone, First Atlantic also applied protectively for a variance from that requirement, proposing 144 rather than 166 parking spaces.

The applicant's witnesses described the proposed hotel, one of thirty-eight Susse Chalet properties existing or under construction, as a limited-service, high-quality hotel servicing primarily commercial customers at rates twenty-five to fifty percent lower than those offered by competing chains. The rooms would not be accessible directly from the exterior parking area, but could be reached only from a central corridor system described as providing enhanced security for patrons. No restaurant, food service, or meeting-room facilities were to be provided. Although based on past experience the chain's hotels adequately serviced guests and staff by providing .8 parking spaces per room, the plan submitted to the Planning Board contemplated 144 parking spaces, substantially more than the anticipated need.

With respect to the height variance, a professional planner engaged by First Atlantic testified that he found it difficult to reconcile the 1–L zone's two-story, thirty-foot height limitation on hotels with its six-story, ninety-foot height limitation on office buildings. The witness stated that a four-story office building, approximately forty-four to fifty-feet high, was under construction on Route 66 near the site of the proposed hotel, and that other buildings in the immediate vicinity exceeded the thirty-foot height limitation on hotels. Noting the similar exterior appearance of the proposed five-story hotel, which was to be erected with a brick facade, and that of permitted, six-story office buildings, the planner questioned whether the Township had intended the 1–L zone's height limitation to apply to hotels. The planner also observed that in his experience, a two-story limitation on hotels was unrealistic. Observing that the appearance and configuration of the proposed hotel were appropriate for the surrounding area, he anticipated that the hotel would be

complementary to the existing commercial uses in the area and to the future commercial development that was likely to occur.

The Planning Board approved the site plan and related variances, subject to conditions set forth in its resolution, concluding that the proposed hotel would "further and promote development in the municipality consistent with the * * * Land Use Ordinance." The resolution's only acknowledgment of the statutory criteria for a subsection c(2) variance occurs by virtue of the Board's "adoption" of the conclusions of the applicant's planner, which include the opinion that no detriment to the master plan or zoning ordinance would result from the grant of the height and parking variances, and that the "benefits" accruing from the variances were substantial because of the compatibility of the proposed use with the development in the surrounding area.

As noted, the Law Division set aside the Board's action, reasoning that because height variances are cognizable only under subsection d of *N.J.S.A.* 40:55D–70, the Planning Board's ancillary authority to grant subsection c-type variances, see *N.J.S.A.* 40:55D–60a, was inapplicable. The Appellate Division reversed, concluding from its review of the Neptune Zoning Ordinance that there was no specific height limitation regulating hotels in the 1–L zone, nor any evidence that the municipality regarded the variance sought as one over which the Board of Adjustment's jurisdiction was exclusive. 235 *N.J.Super.* at 592, 563 *A.*2d 577. Accordingly, the court concluded that the required height variance was cognizable under subsection c of *N.J.S.A.* 40:55D–70, and hence within the jurisdiction of the Neptune Planning Board. *Id.* at 592–93, 563 *A.*2d 866. The Appellate Division also found sufficient evidence in the record to satisfy the affirmative criteria applicable to a c(2)-type variance:

> The lot to be developed by a "motor inn" was part of a major subdivision of 54 acres located on the highway and near the Garden State Parkway. The entire

development was part of a plan referred to at the planning board hearing as a "Corporate Center."

\*        \*        \*        \*        \*        \*        \*        \*

> Respecting the height variance and its relationship to the development, the corporate center was designed to attract business from outside the community. The "motor inn" was targeted to such a commercial traveler, a budget facility, with no frills. There was testimony that the motor inn as designed promoted internal security (as opposed to a two-story motel, with outside access stairways) in order to meet the demonstrated security needs of such travelers, often women. Thus, the record supported a conclusion that varying from the original general height limitation for the district had positive relevance to the town's planned economic development.
>
> [*Id.* at 595–96, 563 *A.*2d 866.]

Concluding that the record also furnished adequate support for the Board's determination that the variance satisfied the negative criteria, *id.* at 596, 563 *A.*2d 866, the Appellate Division, exercising original jurisdiction, reinstated the Planning Board's action approving the site plan and granting the variances.

## II

Remarkably, more than sixty years after enactment of the state's first zoning enabling legislation, the statutory authority for the grant of variances from height restrictions remains ·a matter of uncertainty. That circumstance suggests to us the wisdom of retracing our steps.

After earlier attempts at statutory authorization of zoning were frustrated by constitutional challenges, see Cunningham, *Control of Land Use in New Jersey by Means of Zoning,* 14 *Rutgers L.Rev.* 37, 38 (1959), the Legislature passed a zoning enabling statute in 1924, *L.* 1924, *c.* 146, modeled after the standard state zoning act prepared by the United States Department of Commerce. See *Andrews v. Board of Adjustment of Ocean Township,* 30 *N.J.* 245, 255, 152 *A.*2d 580 (1959) (Hall, J., dissenting). The 1924 act empowered local boards of adjustment to grant variances "not [ ] contrary to the public interest," to avoid "unnecessary hardship, and so that the spirit of the

ordinance shall be observed and substantial justice done." *L. 1924, c. 146, § 7(3).*

The 1924 zoning act was superseded by *chapter* 274 of the *Laws* of 1928, the historical predecessor to *N.J.S.A.* 40:55D–70. The 1928 Act limited significantly the power of boards of adjustment to grant use variances. Pursuant to *chapter* 274, boards of adjustment could grant use variances only with respect to properties within 150 feet of a zoning district in which the use was permitted. *L.* 1928, *c.* 274, § 9(3). For properties more than 150 feet from a district in which the use was permitted, the power to grant variances was vested in the governing body, on recommendation by the board of adjustment. *L.* 1928, *c.* 274, § 9(4). As noted by Justice Jacobs in *Grundlehner v. Dangler,* 29 *N.J.* 256, 265, 148 *A.*2d 806 (1959), the paragraph of the 1928 Zoning Act authorizing boards of adjustment to grant variances was codified at *N.J.S.A.* 40:55–39c, and the paragraph authorizing governing bodies to grant variances after recommendation by a board of adjustment was codified at *N.J.S.A.* 40:55–39d. Although the statutory language was not explicit, the Court of Errors and Appeals held in *Brandon v. Montclair,* 125 *N.J.L.* 367, 368, 15 *A.*2d 598 (1940), that a finding of "unnecessary hardship" was a prerequisite to the grant of a use variance under either subsection c or d of *N.J.S.A.* 40:55–39. *See* Cunningham, *supra,* 14 *Rutgers L.Rev.* at 74–75.

The Legislature enacted significant amendments to subsections c and d of *N.J.S.A.* 40:55–39 in 1948, 1949, and 1953. In 1948 the Legislature deleted from subsection c the limitation that use variances could be granted only with respect to properties within 150 feet of a zoning district in which the proposed use was permitted, and added to subsection c the following language we now refer to as the "negative criteria": "provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance." *L.* 1948, *c.* 305, § 6. In addition, the Legislature amended subsection d to

authorize use variances based on special reasons, empowering boards of adjustment to "[r]ecommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use." *Ibid.* The 1949 amendment, *L.* 1949, *c.* 242, relocated the so-called negative criteria from subsection c to a new paragraph following subsection d, to make clear that the negative criteria applied to all of section 40:55–39. See *Home Builders Ass'n of N. New Jersey v. Paramus,* 7 *N.J.* 335, 341, 81 *A.*2d 753 (1951).

The 1948 amendment posed the question whether the new "special reasons" standard in subsection d eliminated the necessity for proving "hardship," as the Court had required in *Brandon v. Montclair, supra,* 125 *N.J.L.* at 368, 15 *A.*2d 598. In significant dictum in *Monmouth Lumber Co. v. Ocean Township,* 9 *N.J.* 64, 77, 87 *A.*2d 9 (1952), this Court construed the "special reasons" language as no longer requiring proof of hardship to justify a use variance, a conclusion that was affirmed in *Ward v. Scott,* 11 *N.J.* 117, 122, 93 *A.*2d 385 (1952). *See Medici v. BPR Co.,* 107 *N.J.* 1, 9–10, 526 *A.*2d 109 (1987).

Thus, the anomalous state of affairs after the 1948 amendment to *N.J.S.A.* 40:55–39 was that boards of adjustment could grant use variances under subsection c based on proof of "undue hardship," and could recommend the grant of use variances to the governing body under subsection d based on proof of special reasons, a standard that could but need not be satisfied by proof of hardship. *Monmouth Lumber Co. v. Ocean Township, supra,* 9 *N.J.* at 77, 87 *A.*2d 9. Accordingly, numerous use-variance cases instituted after 1948 were based on proofs intended to satisfy the "hardship" standard of subsection c. See *Beirn v. Morris,* 14 *N.J.* 529, 535–37, 103 *A.*2d 361 (1954); *Leimann v. Board of Adjustment of Cranford,* 9 *N.J.* 336, 342, 88 *A.*2d 337 (1952); *165 Augusta Street, Inc. v. Collins,* 9 *N.J.* 259, 263, 87 *A.*2d 889 (1952); *Lumund v. Board of Adjustment of Rutherford,* 4 *N.J.* 577, 580–81, 73 *A.*2d 545 (1950); *Ramsbotham v. Board of Pub. Works of Paterson,* 2

*N.J.* 131, 135, 65 *A.*2d 748 (1949); *National House & Farms Ass'n v. Board of Adjustment of Oakland,* 2 *N.J.* 11, 14, 65 *A.*2d 518 (1949).

The Legislature resolved the overlapping jurisdiction of subsections c and d over use variances in 1953 by an amendment to subsection c, which added the following clause: *"provided, however,* that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use." *L.* 1953, *c.* 288. A statement appended to the amendment explained its purpose:

At the present time there is considerable confusion throughout the State with respect to the powers of the boards of adjustment as set forth in Revised Statutes, section 40:55–39, particularly concerning paragraphs c and d of the section.

The purpose of the present bill is to clarify such powers. The bill has been endorsed by the New Jersey State League of Municipalities, the New Jersey Institute of Municipal Attorneys and the New Jersey Federation of Official Planning Boards.

[Statement, *L.* 1953, *c.* 288.]

Thus, the 1953 amendment divested boards of adjustment of the power to grant use variances, see *Ward v. Scott (II),* 16 *N.J.* 16, 26–27, 105 *A.*2d 851 (1954) (Heher, J., dissenting). One commentator described the remaining powers of boards of adjustment under subsection c as follows: "[U]nder Section 39(c) it may authorize, as variances, departures from setback and rear and side yard depth requirements, or from *height* and * * * minimum lot size restrictions." Cunningham, *supra,* 14 *Rutgers L.Rev.* at 76 (emphasis added); *accord* Note, *Zoning Under the Constitution of 1947: Review, Prognostication and Legislative Proposals,* 9 *Rutgers L.Rev.* 697, 712 (1955) ("Since the 1953 amendment to * * * 40:55–39(c)[,] * * * a Board of Adjustment may authorize departures from setback and rear and side yard depth requirements, for example, or from *height* and size of lot and building restrictions, provided there is a showing of undue hardship.") (emphasis added).

Between 1953 and the enactment of the Municipal Land Use Law, *L.* 1975, *c.* 291, it appeared to be a settled principle of

zoning law that use variances were regulated under subsection d of *N.J.S.A.* 40:55–39, and so-called "bulk" variances, see *N.J.S.A.* 40:55D–65b, under subsection c. The reported cases are generally consistent with that principle. See *DeSimone v. Greater Englewood Housing Corp. No. 1*, 56 *N.J.* 428, 439–44, 267 *A.*2d 31 (1970) (sustaining use variance under subsection d, and height, side-yard, and parking variances under subsection c); *Gougeon v. Board of Adjustment of Stone Harbor*, 52 *N.J.* 212, 218, 223, 245 *A.*2d 7 (1968) (reviewing and remanding denial of variances for lot area and side-yard under subsection c); *Harrington Glen, Inc. v. Municipal Bd. of Adjustment of Leonia*, 52 *N.J.* 22, 25–26, 243 *A.*2d 233 (1968) (reviewing and remanding denial of variances for lot area, frontage, and side-yards under subsection c); *Place v. Board of Adjustment of Saddle River*, 42 *N.J.* 324, 330–32, 200 *A.*2d 601 (1964) (affirming denial of side-yard variance for fallout shelter under subsection c, and holding subsection d inapplicable because use was permitted); *Russell v. Board of Adjustment of Tenafly*, 31 *N.J.* 58, 69–71, 155 *A.*2d 83 (1959) (reviewing and affirming grant of setback and area variances under subsection c); *Ardolino v. Board of Adjustment of Florham Park*, 24 *N.J.* 94, 106–07, 130 *A.*2d 847 (1957) (reviewing and reversing denial of frontage variance under subsection c); *Branagan v. Schettino*, 100 *N.J.Super.* 580, 587–88, 242 *A.*2d 853 (App.Div.1968) (reviewing and reversing grant of area and frontage variances under subsection c); *Bove v. Board of Adjustment of Emerson*, 100 *N.J.Super.* 95, 101, 241 *A.*2d 252 (App.Div.1968) (reviewing and affirming denial of frontage variance under subsection c); *Toutphoeus v. Joy*, 81 *N.J.Super.* 526, 534–36, 196 *A.*2d 250 (App.Div.1963) (reviewing and remanding grant of frontage variance under subsection c); *Holman v. Board of Adjustment of Norwood*, 78 *N.J.Super.* 74, 79–81, 187 *A.*2d 605 (App.Div.1963) (reviewing and reversing grant of undersized-lot variance under subsection c); *Smith v. Paquin*, 77 *N.J.Super.* 138, 146–47, 185 *A.*2d 673 (App.Div.1962) (reviewing and remanding denial of area, frontage, and side-yard variances under

subsection c); *Betts v. Board of Adjustment of Linden*, 72 *N.J.Super.* 213, 217–19, 178 *A.*2d 209 (App.Div.1962) (reviewing and affirming denial of frontage and area variances under subsection c); *Miller v. Board of Adjustment of Boonton*, 67 *N.J.Super.* 460, 473–74, 171 *A.*2d 8 (App.Div.1961) (holding that because bathhouse was prohibited use in residential zone, variance relief could be granted only under subsection d and not c, and affirming denial of variance); *Bierce v. Gross*, 47 *N.J.Super.* 148, 157–61, 135 *A.*2d 561 (App.Div.1957) (reviewing and reversing grant of depth and area variances under subsection c); *Deer–Glen Estates v. Board of Adjustment of Fort Lee*, 39 *N.J.Super.* 380, 384–87, 121 *A.*2d 26 (App.Div.1956) (holding that variance for residential-side-yard violation must be reviewed under subsection c rather than d, and reversing Law Division's grant of variance); *Mischiara v. Board of Adjustment of Piscataway*, 77 *N.J.Super.* 288, 292–94, 186 *A.*2d 141 (Law Div.1962) (reviewing and reversing denial of frontage and area variances under subsection c).

The only reported cases involving height variances during that period are *DeSimone v. Greater Englewood Housing Corp. No. 1, supra,* 56 *N.J.* at 443–44, 267 *A.*2d 31, and *Isko v. Planning Bd. of Livingston,* 51 *N.J.* 162, 238 *A.*2d 457 (1968). In *DeSimone,* observing that subsection c "authorizes a variance from yard, setback, height and similar restrictions," 56 *N.J.* at 443, 267 *A.*2d 31, the Court sustained the grant of height, side-yard, and parking variances under subsection c, *id.* at 443–44, 267 *A.*2d 31, while affirming the grant of a use variance for a moderate-income-housing project under subsection d. *Id.* at 442, 267 *A.*2d 31.

*Isko* involved an application to build a six-story, ninety-one-foot addition to St. Barnabas Hospital in Livingston, to be integrated with the existing six-story, ninety-five-foot main building. When the main building was erected, the hospital use was permitted and the zoning ordinance imposed no limitation on the height of nonresidential structures. An intervening amendment imposed a thirty-five-foot height limitation in the

zone but permitted existing buildings that were nonconforming regarding height to be expanded, provided the expansion did not further violate the height limitation. The Board of Adjustment granted the hospital's appeal for a height variance under subsection c. This Court affirmed, but concluded that no height variance was required because the proposed addition was an expansion that did not exceed the height of the main building and therefore was permitted under the Livingston ordinance. 51 *N.J.* at 176–77, 238 *A.*2d 457. In dictum, the Court noted that although a height variance was cognizable under subsection c, the proofs in the record did not support a subsection c variance, because there was no showing of "any exceptional narrowness, shallowness, or shape of the hospital tract * * * which would cause undue hardship." *Id.* at 174, 238 *A.*2d 457. The Court observed, however, that the Board of Adjustment could have recommended the grant of the variance to the governing body on the basis of "special reasons" under subsection d. *Id.* at 174–75, 238 *A.*2d 457.

In contrast to the dictum in *Isko, Place v. Board of Adjustment of Saddle River, supra,* 42 *N.J.* 324, 200 *A.*2d 601, holds squarely that a structure that does not conform with side-yard-setback requirements *cannot* be the subject of a variance under subsection d if the underlying use is permitted. *Id.* at 330, 200 *A.*2d 601. In *Place,* the proposed use was a fallout shelter constructed in a residential zone in violation of the ordinance's forty-foot setback provision. Although contending that a fallout shelter was not a structure within the meaning of the ordinance, *id.* at 328, 200 *A.*2d 601, plaintiff nevertheless sought variances for the side-yard violation under subsections c and d. The Board of Adjustment determined that the fallout shelter was a permitted use, but denied the side-yard variance. *Id.* at 330, 200 *A.*2d 601. This Court determined that the fallout shelter was a "structure" within the meaning of the Saddle River ordinance, but because the underlying use was permitted, reasoned that "subsection (d), which permits the board to recommend * * * the granting of a variance to allow a struc-

ture or use in a district restricted against such structure or use *does not apply." Ibid.* (emphasis supplied). The Court sustained the denial of the variance under subsection c. *Id.* at 331–32, 200 *A.*2d 601; *accord Deer–Glen Estates v. Board of Adjustment of Fort Lee, supra,* 39 *N.J.Super.* at 384, 121 *A.*2d 26.

Enactment in 1975 of the MLUL, *L.* 1975, *c.* 291, and the subsequent adoption of various amendments to the MLUL, blurred the established distinction between subsection c and d variances. Although the MLUL adopted in subsections c and d of *N.J.S.A.* 40:55D–70 the basic provisions of subsections c and d of *N.J.S.A.* 40:55–39 (*repealed by L.* 1975, *c.* 291, § 80), it introduced two significant changes in variance practice. First, boards of adjustment were empowered to *grant* use variances by a two-thirds vote, *N.J.S.A.* 40:55D–70d, subject to review by the governing body, *L.* 1975, *c.* 291, § 8, a power they had possessed previously only under the 1924 statute, *L.* 1924, *c.* 146, and during the brief period between the 1948 and the 1953 amendments. *L.* 1948, *c.* 305; *L.* 1953, *c.* 288. In addition, planning boards were authorized, in the course of review of subdivisions, site plans, or conditional-use variances, to approve *certain* subsection c-type variances, specifically for lot area, lot dimensions, setback, and yard requirements. *L.* 1975, *c.* 291, § 47.

The 1979 amendments to the MLUL eliminated any limitation on the subsection c variances that a planning board could grant, *L.* 1979, *c.* 216, § 19, but also empowered boards of adjustment to grant bulk variances as well as use variances under subsection d. *L.* 1979, *c.* 216, § 23. The effect of that amendment was to produce an "unanticipated shift of applications from planning boards to zoning boards." *Kaufmann v. Planning Bd. for Warren Township,* 110 *N.J.* 551, 559, 542 *A.*2d 457 (1988).

The most recent amendments to the MLUL, *L.* 1984, *c.* 20, sought to restore but modify the historical distinction between

subsection c and d variances, removing from subsection d all bulk or dimensional-type variances except those involving density and floor-area ratios. *L.* 1984, *c.* 20, § 12. At the same time, the Legislature expanded the grounds for subsection c variances by adding a new paragraph c(2), under which bulk variances may be granted without proof of hardship, on a showing that the proposed deviation would advance the purposes of zoning and the anticipated benefit would substantially outweigh any detriment. *See generally Kaufmann, supra,* 110 *N.J.* at 561–65, 542 *A.*2d 457 (discussing legislative objectives in establishing criteria for c(2) variances).

The 1984 amendments also eliminated the automatic right of appeal to the governing body from board-of-adjustment grants of subsection d variances, limiting such appeals to those municipalities that provide specific authorization therefor by ordinance. *L.* 1984, *c.* 20, § 6.

As noted, the 1984 amendments added to the variances cognizable under subsection d those for increased floor-area ratio and increased density. "Floor area ratio" is defined as "the sum of the area of all floors of buildings or structures compared to the total area of the site," and "density" is defined as "the permitted number of dwelling units per gross area of land to be developed." *N.J.S.A.* 40:55D–4. As is self-evident from the latter definition, density restrictions affect only the *number* of individual residential units that may be constructed on a tract of land. Floor-area restrictions affect the aggregate size—height, width, and depth—of residential and commercial structures in relation to the area of the land on which they are to be built. Thus, municipalities seeking to exercise enhanced control over the density of residential development, or over the aggregate size, including height, of residential and commercial structures relative to lot area, should adopt density or floor-area-ratio regulations, or both. Variances from such regulations may be granted only under subsection d. *L.* 1984, *c.* 20, § 12. We are informed by *amici* that in earlier drafts of the

legislation that resulted in *chapter* 20, height variances were specifically included as subsection d variances. See Pozycki, *Legislative Reform in the Offing*, N.J.St.B.A., Land Use L. Section, V. 11, No. 2 (Jan.1983); A–2107, 200 Legis., 2d Sess. (Nov. 23, 1982). However, the reference to height variances was deleted from the final version of the legislation. *L.* 1984, *c.* 20.

Plaintiff has called to the Court's attention an Assembly bill proposing an amendment to *N.J.S.A.* 40:55D–70, A–1440, 204 Legis., 1st Sess. (1990), which would add to the category of variances cognizable under subsection d an application to permit a structure that "exceeds by 10 feet or 10% the maximum height permitted in the district."

### III

The foregoing historical overview of variance proceedings provides some obvious insights. Putting aside the 1924 Act, *L.* 1924, *c.* 146, under which boards of adjustment granted all variances under a single standard, the legislative scheme, except for brief periods of overlap, has been to separate use variances from other variances and to enhance their significance, requiring approval by the governing body prior to the MLUL, *see L.* 1928, *c.* 274, § 9(4), and *L.* 1948, *c.* 305, and pursuant to the MLUL, requiring approval by affirmative vote of at least five members of the board of adjustment. *See N.J.S.A.* 40:55D–70d. The rationale for the stricter statutory supervision over use variances is based on their greater potential for disrupting a municipal zoning plan. The brief period between 1948 and 1953 when use variances were cognizable under subsection c or d of the prior statute, see *supra* at 554–556, 585 *A.*2d at 932–934, and the period between 1979 and 1984 when bulk variances could be sought under subsections c or d of the MLUL, were characterized by confusion and uncertainty. See Statement, *L.* 1953, *c.* 288, *supra* at 556, 585 *A.*2d at 933–934, and Sponsor's Statement to Assembly Bill No. 1169,

*L.* 1984, *c.* 20. Thus, absent specific legislative authorization to the contrary, we discern a legislative purpose to maintain a distinction between use and dimensional variances, according the more protective approval mechanism to use variances.

■ Although the Legislature has seen fit to include variances from floor-area-ratio and density restrictions among those warranting the more-protective treatment afforded to subsection d variances, *L.* 1984, *c.* 20, § 12, it has not expressly included variances from height restrictions within subsection d. The Legislature may have reasoned that variances from floor-area-ratio requirements, which regulate the aggregate size of structures—including height, width, and depth—in relation to the area of the tract under development, pose a greater threat to the stability of the zoning scheme than do other dimensional variances such as those involving restrictions on height or setbacks. We recognize that an application for a substantial height variance has the potential to disrupt the municipal zone plan, see *North Bergen Action Group v. North Bergen Planning Board,* 122 *N.J.* 567, 585 *A.*2d 939 (1991), also decided today, but we are satisfied that the affirmative and negative criteria for bulk variances pose a formidable obstacle to such applications. See *id.* at 576–578, 585 *A.*2d at 943–944. In any event, we consider the legislative judgment to be clear and unambiguous, denominating only use variances, including expansions of nonconforming uses and deviations from standards for conditional uses, *N.J.S.A.* 40:55D–70d(2) and (3), density variances, and floor-area-ratio variances, as within subsection d.

The Appellate Division expressed concern, however, that a determination that height variances are cognizable only under subsection c would ignore the longstanding statutory language that includes within subsection d those variances seeking to permit a "use *or principal structure* in a district restricted against such use or *principal structure," N.J.S.A.* 40:55D–

70d(1) (emphasis added), apparently being of the view that that language was potentially applicable to a structure that exceeded the applicable height limitations, even though the underlying use was permitted. 235 *N.J.Super.* at 591, 563 *A*.2d 866. We read the phrase "restricted against such * * * structure" differently, acknowledging, however, that that phrase has been virtually ignored in published opinions since it was first introduced in the 1928 zoning act. *L.* 1928, *c.* 274, § 9(3) and (4). (The word "principal" was added by the 1984 amendment. *L.* 1984, *c.* 20, § 12.) We discern from cases such as *Place v. Board of Adjustment of Saddle River, supra,* 42 *N.J.* at 330–32, 200 *A*.2d 601, and *Deer–Glen Estates v. Board of Adjustment of Fort Lee, supra,* 39 *N.J.Super.* at 384–87, 121 *A*.2d 26, that where a structure violates a dimensional restriction of a zoning ordinance but the underlying use is permitted, the required variance is dimensional, under subsection c, and not a use variance involving a prohibited structure. We need not determine here the definitive interpretation of the statutory phrase, but we infer that it is intended to apply to zoning ordinances that restrict specific types of structures, such as churches or billboards, irrespective of their underlying uses, requiring variances from such restrictions to be processed under subsection d. *Cf. State v. Cameron,* 100 *N.J.* 586, 596–97, 498 *A*.2d 1217 (1985) (acknowledging that local zoning ordinance prohibiting "churches" could be understood to prohibit structures erected for conduct of religious activities, without prohibiting constitutionally-protected conduct); *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio,* 699 *F*.2d 303, 307 (6th Cir.) (upholding constitutionality of zoning ordinance prohibiting construction of churches in certain residential districts, and construing ordinance to prohibit only church buildings but not freedom to worship), *cert. denied,* 464 *U.S.* 815, 104 *S.Ct.* 72, 78 *L.Ed.*2d 85 (1983). In any event, we hold that a structure containing a permitted use that deviates only from setback or height restrictions in the zoning ordinance does not constitute a "principal

structure in a district restricted against such * * * principal structure" within the meaning of *N.J.S.A.* 40:55D–70d(1), and hence the required variances could be granted only under subsection c of *N.J.S.A.* 40:55D–70.

Our conclusion that variances from height restrictions are dimensional variances cognizable only under subsection c is generally consistent with the distinction in *N.J.S.A.* 40:55D–65a and b between use regulation, on the one hand, and the regulation of bulk, height, lot size, and intensity of land use. It is also consistent with the treatment of area and dimensional variances in other jurisdictions. *See* 3 R. Anderson, *American Law of Zoning*, §§ 18.07, 18.46 (2d ed. 1977) (characterizing area variances as those involving setback lines, frontage requirements, height, lot size, density, and yard requirements); *accord Wilcox v. Zoning Bd. of Appeals of Yonkers*, 17 *N.Y.*2d 249, 254, 270 *N.Y.S.*2d 569, 571, 217 *N.E.*2d 633, 635 (1966) ("A variance relating to the height of an apartment house, in an area zoned for apartments, is an area variance and not a use variance * * *.").

In the few reported cases involving variances from height restrictions, such variances have been considered to be cognizable under subsection c of *N.J.S.A.* 40:55D–70, or under subsection c of the predecessor statute, *N.J.S.A.* 40:55–39. See *DeSimone v. Greater Englewood Housing Corp. No. 1, supra,* 56 *N.J.* at 443–44, 267 *A.*2d 31; *Isko v. Planning Bd. of Livingston, supra,* 51 *N.J.* at 174, 238 *A.*2d 457; *Valenti v. Planning Bd. of Absecon,* 244 *N.J.Super.* 77, 581 *A.*2d 878 (App.Div. 1990); *accord Davis Enters. v. Karpf,* 105 *N.J.* 476, 492–93, 523 *A.*2d 137 (1987) (Stein, J., concurring); Cunningham, *supra,* 14 *Rutgers L.Rev.* at 76; Note, *supra,* 9 *Rutgers L.Rev.* at 712. Dictum in *Isko, supra,* 51 *N.J.* at 174–75, 238 *A.*2d 457, and in *Cranmer v. Township of Evesham,* 162 *N.J.Super.* 204, 212, 392 *A.*2d 630 (Ch.Div.1978), suggesting that height variances are cognizable under subsection d of either *N.J.S.A.* 40:55D–70 or its predecessor, is inconsistent with our analysis of the

variance power and should not be considered as acceptable authority.

## IV

As noted, the Appellate Division, exercising original jurisdiction, *Rule* 2:10–5, determined that the record adequately supported the Planning Board's determination to grant the required variances for parking and height. We concur with the Appellate Division's affirmance of the parking variance and with its conclusion that on this record the Planning Board could properly have found that the design of the proposed hotel, including its height and interior access to rooms, was consistent with commercial development in the area and "had positive relevance to the town's planned economic development." 235 *N.J.Super.* at 596, 563 *A.*2d 577. As the Appellate Division observed, however, the Planning Board's resolution "lacks specificity respecting the zoning benefits to be gained by the height variance." *Id.* at 594, 563 *A.*2d 577. Only by a most indulgent reading of the resolution can we concur in the Appellate Division's conclusion that the Board made the findings concerning zoning benefits and detriment required by subsection c(2) of *N.J.S.A.* 40:55D–70 and determined that the negative criteria are satisfied. See *Kaufmann v. Planning Bd. for Warren Township, supra*, 110 *N.J.* at 564–66, 542 *A.*2d 457. Recognizing that the *Kaufmann* opinion was not available to the Planning Board when it adopted its resolution, we reiterate that "the key to sound municipal decision-making is a clear statement of reasons for the grant or denial of a variance," but we will not "require[ ] that degree of clarity here." *Id.* at 566, 542 *A.*2d 457. We have no doubt that a resolution fully reflective of the statutory standards could have been adopted based on the record before the Board. Local boards and their counsel should take pains to memorialize their decisions in resolutions that explain fully the basis on which the board has acted, with ample reference to the record and the pertinent statutory

standards. *See Medici v. BPR Co., supra*, 107 *N.J.* at 23, 526 *A.*2d 109.

We also concur in the Appellate Division's determination that the Planning Board's procedures did not violate the Open Public Meeting Act, *N.J.S.A.* 10:4–6 to –21. 235 *N.J.Super.* at 597, 563 *A.*2d 577.

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, STEIN, and GARIBALDI–7.

*For reversal*—None.