**231 A.2d 775.**

MARY E. COLE *et al.*, MEMBERS OF THE SCHOOL COMMITTEE
OF THE CITY OF EAST PROVIDENCE *vs.*
ZONING BOARD OF REVIEW OF THE CITY OF
EAST PROVIDENCE.

PROVIDENCE COUNTRY DAY SCHOOL *vs.*
ZONING BOARD OF REVIEW OF THE CITY OF
EAST PROVIDENCE.

JULY 19, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. These are two petitions for certiorari brought to review a decision of the respondent board granting an application for a variance to permit the use of a tract of land zoned residence A as an off-street parking lot to service the needs of an existing adjoining shopping center and authorizing the construction of access roads over the subject property. The writs issued and in compliance therewith the pertinent records and papers were certified to this court for our examination.

It appears therefrom that in 1953 one Fred Podren, hereinafter called applicant, being the owner of two large tracts of land in the then town of East Providence, applied to the town council for a rezoning of said tracts from residence A to commercial C. It is not disputed that the requested change was to permit the construction of a large shopping center.

The two tracts in question are located at the southwest corner and northwest corner of Taunton and Pawtucket avenues respectively in the now city of East Providence. The instant proceedings, however, are concerned solely with a portion of the tract bounded on the north by Taun-

ton avenue and on the east by Pawtucket avenue. The tract comprises some 550,000 square feet and the portion thereof, or subject property, commonly referred to by the parties as "the buffer zone" comprises some 70,000 square feet running from a point 150 feet south of the Taunton and Pawtucket avenues intersection for a distance of 700 feet along the westerly line of Pawtucket avenue and having a depth of 100 feet. At the time applicant applied for rezoning, these 70,000 square feet were part and parcel of the 550,000 square foot tract identifiable as lot 17 on assessor's plat 20.

Notice of the application for the zoning change was duly given and a public hearing held by the town council May 5, 1953. Although a full transcript of that hearing, if one were made, is not a part of the instant record, the minutes of that meeting were introduced in these proceedings by petitioners. It would appear therefrom that taxpayers present were about equally divided in their sentiments, but that the instant petitioners were officially recorded as objecting to the proposed zoning change.

In this connection the East Providence school committee members voiced their objections in the form of a report which is a part of the instant record. It appears therefrom that in their official capacities they voted to urge the town council, if the proposed zoning change were approved, to consider the safety of East Providence senior high school and Providence Country Day school students. To this end they urged that traffic be not permitted ingress or egress to applicant's land off Pawtucket avenue. It should be pointed out that the East Providence senior high school is on the easterly side of Pawtucket avenue immediately across from applicant's land, while Providence Country Day school is on the westerly side of Pawtucket avenue just south of applicant's land.

At the conclusion of said public hearing the town council voted to rezone the property from residence A to commecial

C, with the following proviso: "That starting at the corner of Taunton and Pawtucket Avenues, a buffer strip, 100 feet deep, running the length of the property involved be maintained."

Several years thereafter, the shopping center having been completed on that portion of lot 17 rezoned as commercial, applicant applied to the East Providence zoning board of review for an exception to that portion of lot 17 not so zoned and referred to as "the buffer zone." The relief sought was to permit the use of the 70,000 foot strip for off-street parking to be used in connection with the shopping center. The board granted an exception, but its decision was quashed by this court on the grounds that the exception granted was not one prescribed by the zoning ordinance. *Cole* v. *Zoning Board of Review*, 94 R. I. 265, 179 A.2d 846.

Thereafter, on November 16, 1962, applicant again applied to the board for relief seeking a variance in accordance with the provisions of G. L. 1956, §45-24-19(c), on the grounds that a literal enforcement of the terms of the ordinance resulted in a loss of all beneficial use of "the buffer zone" so called. Notice of the pendency of this application was duly given and a hearing held thereon at which extensive testimony was given on behalf of applicant and by numerous remonstrants.

The board granted a variance subject to certain conditions and safeguards as set forth at a more appropriate juncture. The instant petitioners thereupon applied to this court for writs of certiorari which were duly issued. Pursuant thereto the pertinent records were certified to this court and the cause was orally argued and briefed by the parties. Upon an examination of the records thus certified, however, it became apparent that applicant and the two real estate experts produced by him had been unaware of all of the uses permitted in a residence A zone. They failed to rule out a possible utilization of the land for use in connection

with libraries, public museums, community buildings and private clubs; uses specifically permitted in a residence A zone. Furthermore, in their decision the board expressly found that the land could not be utilized for any of the uses permitted by the ordinance and proceeded to spell out such uses making no mention, however, of those overlooked by applicant and his witnesses.

We thereupon quashed the decision holding that failure to negate the possibility of beneficial utilization of his land for all uses permitted in a residence zone was fatal to applicant's case. We concluded, however, "* * * that the ends of justice will be best served if the board were to reconsider this application and thereafter reach a determination thereon in accordance with this opinion." *Cole* v. *Zoning Board of Review*, 97 R. I. 220, 223, 197 A.2d 166, 168.

In our remand, however, we reserved to the board the right to receive additional testimony, if considered desirable. On April 27, 1964, a public hearing was held on the authority of our remand, and additional evidence was received. Paul W. Carter, a real estate expert, was again called by applicant and questioned regarding the adaptability of the subject property to the permitted uses not previously considered; he gave it as his opinion that the land could not be successfully utilized in connection with any of them, giving varying reasons in each instance. His was the only additional testimony offered by applicant.

Neither petitioners nor any other objectors offered testimony at the April 27 meeting, but petitioners did put in evidence a certified copy of a quitclaim deed recorded December 2, 1963, showing that applicant had transferred the subject property from himself to Jobel Realty Corp. and was no longer the owner. Our decision remanding the cause for reconsideration was filed January 29, 1964, and the transfer from applicant to the named corporation took place almost two months prior thereto.

This exhibit was introduced at the outset of the April 27,

1964, hearing and with its introduction the instant petitioners argued to the board that Fred Podren no longer having any interest in the land, the board lacked jurisdiction to further consider the application. The attorney who had represented Podren as applicant throughout informed the board that he also represented Jobel Realty Corp., and claimed that it had a right to pursue the application; and he argued, in effect, that since the application was to relieve the land of an unjust burden, the transfer of ownership was without legal materiality. The board rejected the argument that it lacked jurisdiction and proceeded to receive evidence from the real estate expert Carter.[1]

At the close of the April 27, 1964, hearing, the board voted to defer its decision until the members had an opportunity to consider the whole record. It is clear from their action in this regard that they understood the mandate in this court's remand.

On May 11, 1964, the board announced its decision. With one member voting to deny the application the remaining four, subscribing to the reasoning of the chairman and three fellow members, voted to grant a variance subject to the conditions and safeguards imposed in their previous decision, with the additional condition that the subject property should not be subjected to a lower use than off-street parking and the access roads for a period of five years. No contention is made regarding this latter condition and we refer to it only by way of completing the record.

After the board had made known its decision granting the variance as aforesaid, the instant petitioners again made application to this court for writs of certiorari. They issued, and the cause is before this court on the decision of

---

[1] In their briefs and oral arguments, petitioners made no issue of the change in ownership, apparently concluding that their position taken before the board was not worth pursuing here. In any event, they not having raised it before us, we decide this case as though the question had never arisen.

the board which, it is manifest, was reached in consideration of the record made in the original hearing as supplemented by the hearing held subsequent to our remand. Although the findings of the board are not set forth with that preciseness and clarity which this court has repeatedly stated to be desirable, *Robinson* v. *Town Council,* 60 R. I. 422, 199 A. 308, *Mount Pleasant Realty & Constr. Co.* v. *Zoning Board of Review,* 100 R. I. 31, 210 A.2d 877, the factors on which the board relied and their reasoning with relation thereto in deciding that a literal enforcement of the ordinance would result in the loss of all beneficial use, are sufficiently stated in their decision so as not to render it an abuse of discretion within the meaning of *Berg* v. *Zoning Board of Review,* 64 R. I. 290, 12 A.2d 225, and *Buckminster* v. *Zoning Board of Review,* 68 R. I. 515, 30 A.2d 104.

In their decision the board relates the testimony of the witnesses to the shape of "the buffer zone"; its contiguity to the shopping center; even the testimony of some remonstrants that none would build a residence on the subject property; and that, in their judgment, the opinion of a real estate expert that it was unrealistic to expect anyone to make use of the land for any of the other permitted uses was well founded. Furthermore, the decision incorporates a comprehensive set of conditions which are illuminating in passing on the findings and reasoning of the board in making their decision.[2]

An examination of the record discloses that the testimony of applicant's real estate expert witnesses, Stephen L. Reed and Paul W. Carter, is competent to support the board's determination that a hardship existed within the meaning of §45-24-19(c) and decided cases. Additionally, in its decision the board found that the granting of the relief sought

---

[2]So as not to extend this opinion as such, the conditions and safeguards are set forth in appendix A.

would not be contrary to the public interest which in *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26, 29, 144 A. 674, 676, this court interpreted as meaning "* * * what in the judgment of a reasonable man would unduly, and in a marked degree conflict with the ordinance provisions."

From the record of the May 5, 1953, meeting of the town council at which applicant's two large tracts were rezoned from residence A to commercial C except for the subject property designated by said council as "the buffer zone," it is clear that the town council intended the subject property to remain as residence A for several reasons. It is equally clear that these were: to keep the subject property in reasonable harmony with the aesthetic features of the East Providence senior high school property; to prevent the building of structures commercial in nature along the westerly side of Pawtucket avenue; and to eliminate possible traffic hazards to the students of both East Providence senior high school and Country Day school.

In granting a variance, the board imposed conditions which called for the maintenance of a five-foot strip of shrubbery, hedges and flower boxes so that aesthetic values reasonable in extent would be preserved, and further provided that the remainder of the lot to be used for parking should be paved with the same material as used in the parking area on the C zoned property in the interest of uniformity. Obviously, permitting this area to be used for parking only eliminated any question of commercial type building construction which the town council sought to prevent. It should be borne in mind that had the subject property also been rezoned to commercial uses, control of such uses thereon constructed would be little, if any.

The third factor motivating the action of the town council, namely, safety of the school children, was also taken into consideration by the board in reaching its decision. It is undisputed that Pawtucket avenue is a state highway and public access to and from abutting property in the

interest of safety is subject to regulation by the state. See G. L. 1956, chap. 8 of title 24, and *Pooler* v. *Burton,* 40 R. I. 249, 100 A. 465. The applicant testified that he had consulted with the state authorities and proposed two points of ingress and egress which had met with state approval.

In this regard, Philip S. Mancini, state traffic engineer, testified that the access points which the state approved would not result in increased traffic hazards.

Gerald M. McCarthy, East Providence traffic engineer, also testified that he had made a survey of the area, studied the traffic problem, conferred with the state engineer and corroborated the latter's testimony.

Again, included in the safeguards and conditions imposed by the board, is the requirement that the two access roads proposed by applicant conform and be limited to the recommendations and approval of the state and city engineers.

We think it manifest that in their finding a grant of the variance sought would not be adverse to the public interest, the board relied on evidence that supports their decision in this regard. Hence, there being competent evidence to support the board's decision on the issues of hardship and the public interest, it follows that their decision is neither arbitrary nor an abuse of their discretion and should stand if otherwise valid. *Madden* v. *Zoning Board of Review,* 89 R. I. 131, 151 A.2d 681.

The petitioners, however, attack the decision on several other grounds. The first of these is that the decision is contrary to law in that the board invaded the province of the city council by granting a variance which would permit a use expressly prohibited by the terms of the zoning change. In support of this contention they cite *Day* v. *Zoning Board of Review,* 92 R. I. 136, 167 A.2d 136. There the zoning board of review authorized the extension of a business use into an area of 23 feet in depth, which area was partially zoned for dwellings and partially zoned for apartment houses. The extension was authorized subject to a condition

that the rear of the extension should be fenced in and closed to vehicular traffic. With the imposition of this condition, remonstrants at the hearing withdrew their objection. Later the property owner sought to remove the restriction by way of a variance and the application was denied. Thereafter, an attempt to get around the restriction was made by application for an exception, which was granted. This court quashed that decision holding that absent a material change in the circumstances existing when the condition was imposed, the decision constituted an abuse of discretion.

The instant petitioners argue that the circumstances here are analogous to those in the *Day* case. They do so by suggesting that applicant, like the property owner in *Day,* having obtained a benefit that he sought and accepted subject to limitations, cannot now circumvent the expressed will of the town council by recourse to the board of review. If sustained, they contend the board's decision would amount to an indirect amendment of the ordinance provisions contrary to the rule laid down by this court in *Matteson* v. *Zoning Board of Review,* 79 R. I. 121, 84 A.2d 611; *Paterson* v. *Zoning Board of Review,* 80 R. I. 494, 98 A.2d 847; *Harte* v. *Zoning Board of Review,* 80 R. I. 43, 91 A.2d 33. The import of our holding in those cases on which petitioners rely, is that the establishment of use districts is vested exclusively in the municipal legislature, and that the zoning board of review created by that body pursuant to the provisions of the state enabling act is without authority to effect rezoning under the guise of variances or exceptions.

Quite apart from the fact that none of the determinative circumstances in the *Day, Matteson* or other cited cases is present in the instant record, petitioners' contentions lack validity in that they confuse that which in effect amounts to rezoning with a proper exercise of a board of review's jurisdiction to authorize in an appropriate case an exception or variation from the uses prescribed within a district established by the municipal legislature.

Thus when pursuant to the provisions of §45-24-2, a local legislature has established a use district and made such uses permitted therein subject to regulations which, when applied to a parcel of land within that district, cannot be met and if insisted upon deprive the owner of said parcel of all beneficial use, §45-24-19(c) vests the local board of review with jurisdiction to grant relief by way of a variance and prevent what would amount to confiscation. *Hazen* v. *Zoning Board of Review,* 90 R. I. 108, 155 A.2d 333; *R-N-R Associates* v. *Zoning Board of Review,* 100 R. I. 7, 210 A.2d 653. It is by these means that the constitutionality of the ordinance is preserved.

Moreover, the regulated use within an established district must be applicable to all property located within such district so as to avoid that discrimination which would be a denial of the equal protection of the laws as guaranteed by art. XIV of amendments to the United States constitution. See *City of Providence* v. *Stephens,* 47 R. I. 387, 133 A. 614. It is by way of a board of review's jurisdiction to grant a variance from the terms of the ordinance as they relate to a given parcel of land that provision is made to preserve an ordinance otherwise constitutional.

Here applicant offered competent testimony, which the board accepted as was their prerogative, designed to establish that, for reasons appearing in the record and referred to by the board in reaching their decision, the subject property could not be utilized for any of the uses permitted in the district for which it was zoned. We have repeatedly held that in such circumstances the decision of a board of review is a valid exercise of the authority vested in them by the terms of the state enabling act. *Morgan* v. *Zoning Board of Review,* 52 R. I. 338, 160 A. 922; *Miriam Hospital* v. *Zoning Board of Review,* 67 R. I. 295, 23 A.2d 191: *Kent* v. *Zoning Board of Review,* 74 R. I. 89, 58 A.2d 623. Indeed we have held that the jurisdiction of the board to grant a variance in an appropriate case is such that a denial

of the relief sought would constitute an abuse of the board's judicial discretion. *Thomas* v. *Zoning Board of Review*, 84 R. I. 330, 124 A.2d 859.

The petitioners further contend, however, that the board's decision is erroneous in law for the reason that they treated the so-called "buffer zone" or subject property as a parcel of land separate and apart from the 480,000 square feet of lot 17 which had been rezoned to commercial C. This is a novel contention. It presupposes that all of said lot 17 was in effect rezoned to commercial C, but that the subject portion was left subject to restrictions not applicable to other property zoned for commercial uses. This contention is clearly without merit. As previously noted, the regulations made applicable to a given zone established by the municipal legislature in the exercise of its jurisdiction must be applicable to all land situated within such zone. The East Providence town council recognized this requirement of uniformity and attempted to achieve its manifest intention by refusing to rezone the subject property, leaving it to applicant to make such use thereof as was permitted in a residence A district. If it intended, as petitioners seem to argue, to maintain a strip 700 feet in length and 100 feet wide solely to comply with petitioners' objections, its action would have constituted an indefensible exercise of the police power delegated to the town council by the general assembly.

It is a well-established principle that an appellate court will presume that public officers exercise their jurisdiction in accordance with law. *Signore* v. *Zoning Board of Review,* 98 R. I. 26, 199 A.2d 601. We think it clear then that the result of the town council's action of May, 1953, was to leave applicant with a portion of lot 17 zoned residence A and, as such, subject to the jurisdiction applicable to the board of review when considering any other property similarly zoned.

Even if this be so, however, petitioners vigorously con-

tend that such hardship as applicant may have shown to exist was a hardship that was self-imposed, and a variance granted to relieve such hardship constitutes an abuse of the board's discretion, citing *Deer-Glen Estates* v. *Board of Adjustment & Appeal,* 39 N.J. Super. 380, 121 A.2d 26; *Caccia* v. *Zoning Board of Review,* 83 R. I. 146, 113 A.2d 870.

An examination of the facts in those cases and others which might be cited to the same effect, discloses that the applicants seeking a variance created the hardship of which they complained by making an unauthorized use of the land in question. The hardship of which they subsequently complained, and for which they sought variances resulted not from the terms of the ordinance but from their nonconformance in the first instance. Here the unnecessary hardship which applicant seeks to relieve by way of a variance from the restrictions common to all property located in a residence A zone resulted from the action of the town council and not from some prohibited use of his land by applicant.

Yet petitioners argue that the action of the town council was taken at the request of applicant and that he should now be estopped from obtaining relief from a condition that he created. The record, however, does not support this contention. Nowhere does it appear that applicant was a party to a partial rezoning of lot 17. He applied as a matter of right to have both large tracts fronting on Taunton and Pawtucket Avenues rezoned; public notice thereof was given, a hearing held and the town council voted to rezone less of lot 17 than the application requested.

The petitioners appear to argue that applicant's failure to appeal to the superior court amounted to a tacit approval and that he cannot now be heard to complain. It is difficult to see how he could have then complained since at that time the equity court might justifiably have taken the position that the subject property could be put to any of the uses permitted in a residence zone. It was not until some eight

years later when it appeared that, restricted to the permitted uses of a residence zone, the land had no marketable appeal. So appearing, it became applicant's right to apply to the board. We find no merit in any of the petitioner's contentions.

In each case the petition for certiorari is denied and dismissed, the decision of the board is affirmed, and the records and papers in the cause are ordered returned to the respondent board with our decision endorsed thereon.

## APPENDIX A

Safeguards and conditions imposed by the Zoning Board of Review of the City of East Providence.

(1) That no sign shall be erected on the "A" zoned portion of Lot 17, that no sign shall be erected on the property that will interfere with clear visibility of incoming or outgoing traffic onto main highways. That any proposed sign be approved by the Board before erection.

(2) The surface drains and floodlighting in the parking area shall be installed in accordance with the Sumner Schein drawing P.P.2, with the provision that all floodlights so installed shall be shielded in such manner so that the surrounding properties will be protected from the reflection of said lights.

(3) There shall be a five foot wide buffer strip at the easterly line of the "A" zoned property along Pawtucket Avenue and a privet type hedge shall be planted in the center of said buffer strip. The hedge bed shall be approximately two feet in width and the plants shall be planted from two to two and one-half feet on center. Said hedge when fully grown shall not exceed three feet in height and the same shall be maintained and kept neatly trimmed at all times. The hedge shall be set back at least twenty feet from the nearest curb line of any access connection (this distance to be measured perpendicular to the center line of the access connection) to insure adequate sight distance. The petitioner shall also plant decidu-

ous trees along said buffer strip at intervals of fifty to sixty feet.

(4) Access roads on Pawtucket Avenue shall be located in areas approved by the State and City Traffic Engineers, as shown on the hereinabove mentioned Sumner Schein drawing, and the same shall be constructed in accordance with the recommendations of said traffic engineers.

(5) The parking area on the "A" zoned property shall be paved with the same material as used in the parking area on the "C" zoned property in order to establish uniformity in appearance.

(6) This petition is granted upon the further condition that the project shall commence within six months from the date of filing this decision and in the event that any interested party appeals from this decision to the Supreme Court of the State of Rhode Island by a petition for a Writ of Certiorari, the six month period shall begin from the date of the final disposition of the case by the Supreme Court.

*Harry Goldstein,* for Mary E. Cole *et al.; Hinckley, Allen, Salisbury & Parsons, Frank L. Hinckley, Jr., Stephen J. Carlotti,* for Providence Country Day School, petitioners.

*Stephen R. Walsh,* City Solicitor; *Smith & Smith, Z. Hershel Smith, Archie Smith,* of counsel, for respondent.