DECISION
This matter is before the Court on the appeal of Leonard P. Perfido and Ruth S. Perfido ("Appellants") from a decision of the Zoning Board of Review of the Town of New Shoreham (the "Board"). The Board's decision, dated February 23, 2004 and recorded the same day, denied Appellants relief from certain provisions of the Town of New Shoreham Zoning Ordinance (the "Ordinance"). Appellants filed a timely complaint to this Court on March 10, 2004. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellants own a lot in the Town of New Shoreham, Rhode Island ("the Property"), which lot is located in a "Residential A" zone. The Property has an area of only 80,535 square feet, whereas the Ordinance requires 120,000 square feet in a Residential A zone. When Appellants purchased the Property, the only structure thereon was a summer cottage. This *Page 2 
cottage is located only 49 feet from the easterly boundary of the property, whereas the Ordinance requires a 50 foot side setback.
In 1997, Appellants applied for dimensional variances in order to build an addition onto the summer cottage and to construct a detached garage with an attic for storage. The proposed garage was to be located twenty-five feet from the property line, an encroachment of twenty-five feet. The Board granted Appellants' applications in a decision dated February 3, 1998 and recorded in Book 203 at page 198 of the Land Evidence Records of the Town of New Shoreham ("the 1998 Decision"). The 1998 Decision specifically imposed as conditions of relief that "[t]here will be no habitation in the garage now or in the future" and that "[t]here will be no plumbing in the garage." The Board so provided because a "new structure 25 feet from the lot line is not appropriate for an accessory dwelling unit." Appellants did not appeal the conditions imposed by the Board.
In 2003, Appellants applied for dimensional variances to convert the garage attic into a bedroom and bathroom. The variances were necessary because the garage is located only twenty-five feet from the property line whereas the Ordinance requires a fifty foot setback, and because the Appellants' proposed "accessory residential structure" was a permitted use only if such structure met "all special standards of the zone in which it was located." (Ordinance § 422.) By a vote of three to two, the Board denied Appellants' applications in a decision dated February 23, 2004 and recorded the same day at the Town of New Shoreham Land Evidence Records in Book 316 at page 115 ("the 2004 Decision"). In its 2004 Decision, the Board found that conditions imposed in the 1998 Decision continued to constrain Appellants' use of the Property. Moreover, the 2004 Decision specifically found that Appellants could not obtain a *Page 3 
variance because they had created any hardship themselves by failing to appeal the conditions imposed in the 1998 Decision.
One of the two Board members who voted to approve Appellants' applications appended to the 2004 Decision additional or alternative findings. Included among these is the finding "that the applicant has met the test for demonstrating a hardship that is unique to his property." (2004 Decision at 2.) This finding was based on the following rationale:
 Because of the steeply sloping topography, the easterly edge of the lot is the most appropriate location for development. The existing building can meet the need for an additional bedroom and bath. It would therefore be more than a mere inconvenience to require the applicant to construct an additional building further away from his house and down a steep hill. I find further that it is unclear whether alternative sites would be more or less pleasing to neighboring properties. Five out of six neighbors seem to prefer use of the existing building. Id.
Appellants timely appealed the 2004 Decision to this Court on the ground that an amendment to the Ordinance between the 1998 Decision and the 2004 Decision constituted a change in circumstances which rendered the Board's reliance on the 1998 Decision improper. The Board counters that its reliance on the 1998 Decision was proper, and that Appellants' arguments to the contrary constitute a de facto appeal which is impermissible under the doctrine of administrative finality and the applicable statute of limitations. The Board further argues that regardless of whether the 1998 Decision applies here, Appellants cannot obtain a variance because they could construct a conforming accessory residential structure elsewhere on their property. For the reasons set forth herein, this Court grants Appellants' appeal and reverses the Board's 2004 Decision. *Page 4 
 Standard of Review
Section 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see also Mauriciov. Zoning Board of Review of the City of Pawtucket, 590 A.2d 879, 880
(R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts a de novo review of that issue. Tanner v.Town Council, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quotingToohey v. Kilday, *Page 5 415 A.2d 732, 735 (R.I. 1980)) (internal quotations omitted). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Id. In short, a reviewing court may not substitute its judgment for that of the board's if the court "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v.Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 Analysis Administrative Finality
The first question before the Court is whether the Board was required to defer to the 1998 Decision under the doctrine of administrative finality. Appellants note that they expressly did not apply for the same relief in their earlier application and also argue that there was a substantial change in circumstances — namely, an amendment to the Ordinance — between the two applications. The Board argues that the relief which Appellants are requesting was expressly barred in the decision granting their earlier application, and that Appellants are, therefore, barred from succeeding on a subsequent application.
The doctrine of administrative finality bars subsequent applications for the same relief absent a showing of a substantial or material change in the time between the two applications. See Audette v. Coletti,539 A.2d 520, 521-22 (R.I. 1988). "What constitutes a material change will depend on the context of the particular administrative scheme and the relief sought by the applicant and should be determined with reference to the statutes, regulations, and case law that govern the specific field." Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 811
(R.I. 2000). Here, administrative finality does not apply for two reasons: the 1997 and 2003 *Page 6 
applications do not seek the same relief, and there was a material change in circumstances between the two applications.
Appellants are correct that the application at issue here does not set forth a request for the same relief that was requested in their earlier application. Specifically, Appellants' 1997 application sought permission to build an addition onto their house and to construct a detached garage that encroached on the required fifty foot setback. Appellants' 2003 application sought permission to internally modify the detached garage by converting a portion of the garage into a bedroom and bathroom. It is uncontested that Appellants did not request a bedroom or bathroom in their 1997 application. If Appellants had sought in 1997 to include a bedroom and bathroom in their detached garage, then the two applications would have been seeking the same relief, potentially triggering the doctrine of administrative finality. Because the 1997 application did not include such a request, however, administrative finality does not apply here.
Additionally, Appellants are correct that there has been a material change in circumstances in that the Ordinance now allows as a permitted use what would have been flatly prohibited under the regime in place in 1998. "What constitutes a material change . . . should be determined with reference to the statutes, regulations, and case law that govern the specific field." Nolan, 755 A.2d at 811. Here, changes in the Ordinance and in Rhode Island zoning law changed the accessory residential structure which Appellants seek from a legal impossibility into a permitted use subject only to conformity with dimensional requirements.
At the time of the original application, Ordinance § 422 allowed accessory residential structures only by special use permit. Ordinance § 422 also required that accessory residential structures conform to certain dimensional standards. Under the case of Northeastern Corp. v.New Shoreham Zoning Bd. of Rev., 534 A.2d 603 (R.I. 1987), zoning boards did not have the *Page 7 
power to grant a special use permit where dimensional relief was also required. It is undisputed that the garage which Appellants received permission to build in 1998 required dimensional relief. Therefore, under Northeastern Corp., Appellants could not have received the special use permit necessary to include residential elements in the garage in 1998.
In the following years, each of the aforementioned legal provisions was amended or repealed. First, the Ordinance was amended to make accessory residential structures permitted rather than special uses. In 1999, the Town of New Shoreham amended the Ordinance by eliminating § 422. In 2000, the Town of New Shoreham again amended the Ordinance, adding § 511 and also adding accessory residential structures to the list of permitted uses in a Residential A zone. Ordinance § 511 provides performance standards for the construction of accessory residential structures. Because accessory residential structures became subject only to performance standards and not to special use permits, it became possible for landowners to construct dimensionally nonconforming accessory residential structures, provided that they obtain dimensional variances where necessary.
Next, the Ordinance was amended to allow dimensional relief to accompany a special use permit. In 2000, the Town of New Shoreham amended the Ordinance to provide in § 703(G) that "[t]he Zoning Board of Review, by Special Use Permit, may grant relief from the spatial standards of this Ordinance as part of the approval of any Special Use Permit provided in this Ordinance." Thus, even if accessory residential structures had remained special rather than permitted uses, the Board could have allowed a dimensionally nonconforming accessory residential structure based on Ordinance § 703(G).
Finally, any questions as to the Town of New Shoreham's authority to allow dimensional relief in conjunction with special use permits were answered when "in 2002 the [Rhode Island] *Page 8 
Legislature amended the enabling act to give cities and towns the authority to . . . allow their zoning boards to grant dimensional relief . . . in conjunction with a special-use permit in appropriate cases." Roland Chase, Rhode Island Zoning Handbook (2d Ed.) § 172 at 254;see also P.L. 2002, ch. 197, § 1; ch. 218, § 1. Thus, between 1998 and 2000, every provision of law which rendered a dimensionally nonconforming accessory residential structure a legal impossibility had been amended to allow for the lawful existence of such a structure.
In light of this wholesale reversal of applicable law, it can hardly be questioned that there was a substantial change in circumstances between Appellants' first application in 1997 and their second in 2003. Because Appellants did not request the same relief in 1997 that they requested in 2003, and because there was a substantial change in circumstances between 1997 and 2003, the doctrine of administrative finality does not apply to bar Appellants' 2003 application.
 Statute of Limitations
The second question before the Court is whether Appellants are barred from raising the issue of the 1998 Decision under the applicable statute of limitations. The Board argues that Appellants are foreclosed from challenging the condition imposed by the Board because they failed to appeal the 1998 Decision within twenty days after that decision was recorded and posted. Appellants disagree with the Board's contention.
Section 45-24-69(a) provides that "[a]n aggrieved party may appeal a decision of the zoning board of review to the superior court for the county in which the city or town is situated by filing a complaint stating the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk." It is undisputed that Appellants submitted their application in 2003 and that the present action was initiated in 2004, both of which events unquestionably occurred more than twenty days after the 1998 Decision was *Page 9 
recorded and posted. However, it is also clear that the present case is not an appeal of the 1998 decision.
To appeal a decision is "[t]o seek review (from a lower court's decision) by a higher court." Black's Law Dictionary (8th Ed.). Here, Appellants do not seek review of the 1998 Decision. At most, Appellants seek either a review of an issue that the Board decided in its 1998 Decision or a review of the applicability of the 1998 Decision to the 2003 Application. Neither of these situations presents an appeal from the 1998 decision: the former would implicate the doctrine of collateral estoppel[1] rather than the statute of limitations; the latter would implicate no preclusive doctrine whatsoever. Because neither party has raised either of these possibilities, however, this Court will only hold that the statute of limitations does not bar Appellants' timely appeal of the 2003 decision.
 Self-Created Hardship
The third question before the Court is whether Appellants created their own hardship by failing to appeal the 1998 Decision. The Board expressly based its decision on the "conclu[sion] that the Perfidos have brought any and all hardship upon themselves, having accepted the conditions of the prior Board, without protest." (Decision at 2.) Appellants argue that the case of Cole v. Zoning Bd. of EastProvidence, 102 R.I. 499, 231 A.2d 775 (1967) requires that this Court reverse the Board's decision. Appellants so argue on the ground that theCole case provides that applicants for zoning relief do not create their own hardship by failing to appeal a *Page 10 
condition imposed by a zoning board if an appeal would have been futile at the time the condition was imposed. See id. The Board seeks to distinguish this case from Cole on its facts. For the following reasons, this Court holds that Cole applies here and, therefore, that Appellants did not create their own hardship.
Like this case, the Cole case dealt with the problem of an applicant seeking a variance in order to obtain relief from a condition imposed on the grant of a previous application. In Cole, the applicant first sought permission in 1953 to re-zone a tract of land in East Providence from residential to commercial in order to build a shopping center.See 102 R.I. at 499, 231 A.2d at 776. Following a hearing at which the School Committee of the City of East Providence expressed concern regarding traffic safety if ingress and egress from the shopping center were permitted near the entrances to two nearby schools, the East Providence Zoning Board granted the requested relief subject to the condition that a seventy thousand foot long and one hundred foot deep "buffer zone" would be maintained near the schools. See id. at 500-01,231 A.2d at 777. The applicant did not appeal this condition. Seeid. at 510, 231 A.2d at 782.
In 1962, however, the applicant sought a variance permitting encroachment on the buffer strip for the purpose of providing off-street parking. See Cole, 102 R.I. at 501, 231 A.2d at 777. Following hearings, a decision, an appeal and remand, and more hearings, the East Providence Zoning Board granted the variance subject to certain conditions.See id. at 501-03, 231 A.2d at 777-78. The School Committee of the City of East Providence appealed the grant of the variance, arguing in part that the applicant could not use a subsequent application to challenge a condition imposed on the original application where the applicant did not timely appeal the imposition of that condition, because the applicant had created his own hardship by failing to appeal. Seeid. at 503, 509-10, 231 A.2d at 778, 781-82. *Page 11 
Faced with these circumstances, which are directly analogous to the circumstances here, the Court rejected the School Committee's argument and held that the applicant's failure to appeal the condition imposed on the original grant did not create the hardship from which the applicant sought relief. See Cole, 102 R.I. at 510, 231 A.2d at 782. Instead, the Court recognized a change in circumstances between the two applications: specifically, in the intervening years it had become clear that the "buffer zone" deprived the applicant of all beneficial use in the property lying within the zone. See id. at 510-11, 231 A.2d at 782. In light of the fact that this deprivation had not been apparent at the time of the first application, but only became apparent by the time of the second application, the Court held that "it became applicant's right to apply to the board." Id. at 511, 231 A.2d at 782.
Here, Appellants had a right to apply to the Board notwithstanding the condition imposed in the 1998 Decision because the change in circumstances between the two applications was much greater than the analogous change in circumstances in Cole. Appellants definitively could not have succeeded on appeal of the condition imposed in the 1998 Decision for the reasons listed above — namely, because local and state law at that time did not allow Appellants to use a detached garage which encroached on the required setback as a residential structure. By the time of Appellants' second application, however, an accessory residential structure had become a permitted use which required only a dimensional variance in Appellants' situation. In contrast, the applicants in Cole could conceivably have foreseen at the time of their original application that the "buffer zone" would have deprived them of all beneficial use of the property lying thereunder. By the time of the applicants' second application, however, this deprivation had simply become clearer. See Cole, 102 R.I. at 510-11, 231 A.2d at 782. Recognizing the substantial nature of the change in circumstances here, this Court holds that Appellants are not *Page 12 
advancing an untimely appeal, but rather that because of the change in circumstances "it became [Appellants'] right to apply to the board."See id.
This decision is bolstered by another ground for the Court's holding in Cole that the applicant had not created his own hardship. TheCole Court also based its decision on the fact that the hardship asserted as a basis for the requested variance did not stem from any prohibited use by the applicant. See Cole, 102 R.I. at 510,231 A.2d at 782. Instead, the applicant in Cole
fully complied with all applicable provisions of the Ordinance. See id. The Court distinguished the case ofCaccia v. Zoning Bd. of Rev. of City of Providence, 83 R.I. 146, 150,113 A.2d 870, 872 (1955), in which the applicant had created his own hardship by "deliberately build[ing] a dwelling that exceeded the maximum of permitted lot coverage"; under those circumstances, the applicant could not obtain a variance from the maximum lot coverage in order to construct a garage. Id. In contrast, here, as inCole, there is no suggestion that the hardship asserted as a basis for the requested variance stems from any prohibited or unauthorized use by Appellants. See 102 R.I. at 510, 231 A.2d at 782. Accordingly, underCole, Appellants did not create their own hardship. See id.
Because there was a change in circumstances between the two applications and because Appellants did not engage in any prohibited use of their property, Appellants did not create their own hardship as a matter of law. The Board's finding to the contrary is an error of law which affects the 2003 Decision.
 More than a Mere Inconvenience *Page 13 
The fourth question before the Court is whether the Board's finding that Appellants could have constructed a conforming accessory residential structure elsewhere on the property provides an appropriate legal ground for rejecting Appellants' application. Appellants argue that the Board's decision rested on the conditions imposed on the Property by the 1998 Decision, and that the substantial, reliable, and probative evidence of the entire record conclusively demonstrates that the denial of the requested variance constitutes more than a mere inconvenience. The Board argues that under the case of Sciacca v.Caruso, 769 A.2d 578, 583 (R.I. 2001), the availability of another location for an accessory residential structure indicates that Appellants did not satisfy their burden of showing that the denial of the requested variance would constitute more than a mere inconvenience, because Appellants did not demonstrate that "there is no reasonable alternative to enjoy a legally permitted beneficial use of [their] property." However, the Board's reliance on Sciacca is misplaced becauseSciacca has been superseded by an amendment to the Zoning Enabling Act.
It is uncontested that § 45-24-41 sets forth the standards governing variance applications. Specifically, § 41-24-41(d)(2) provides that an applicant for a dimensional variance must show "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." The parties disagree as to whether the "more than a mere inconvenience" standard requires that applicants demonstrate that "no other reasonable alternative" exists in order to enjoy a permitted use.
In 1991, § 45-24-41 was amended to include the requirement that an applicant for a dimensional variance must demonstrate that "no other reasonable alternative" exists for the *Page 14 
enjoyment of a legally permitted use before a variance may be issued.See P.L. 1991, ch. 307, § 1; see also Sciacca, 769 A.2d at 583 (R.I. 2001). It was this harsh statutory rule that the Court followed inSciacca, the case on which the Board relies. See id. However, on June 28, 2002, the Rhode Island General Assembly repealed that portion of the Enabling Act that formed the basis for the Sciacca decision.See P.L. 2002, ch. 384, § 1. This 2002 statutory amendment eliminated the "no other reasonable alternative" language and, therefore, superseded the high standard established by Sciacca for variance applicants. See id.
Not only has the strict Sciacca test been superseded, but the Rhode Island Supreme Court has also recognized that the 2002 statutory amendment reinstated pre-2001 case law interpreting § 45-24-41. The Court in Lischio v. Zoning Bd. of Review of Town of NorthKingstown, 818 A.2d 685, 691 (R.I. 2003), noted that "[t]he new language in the 2002 amendment [to § 45-24-41(d)(2)] reinstates the judicially created Viti Doctrine, Viti v. Zoning Board of Review ofProvidence, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960), which held that for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience." Thus, by statute and by the express holding of the Supreme Court, the harsh requirements ofSciacca have been softened to the pre-2001 "more than a mere inconvenience" standard as defined by the Viti case and its progeny.
Turning then to the most relevant case law following theViti doctrine, the Supreme Court has clearly provided a rule to be applied where an applicant seeks a dimensional variance in order to enjoy a permitted use. In Travers v. Zoning Bd. of Review of Town ofBristol, 101 R.I. 510, 514, 225 A.2d 222, 224 (1967), the board granted the applicant's requested dimensional variance, allowing him to tear down and rebuild a garage which encroached on the required *Page 15 
setbacks in order "to give the tenants a little yard." Even though the garage could have been built in the middle of the yard without encroaching on any setback, the Court upheld the board's decision based on the implicit finding that "to deny the applicant a fuller use of his property and at the same time serve no public interest would be arbitrary and an abuse of discretion." Id. at 514-15, 225 A.2d 224-25. In Westminster Corp. v. Zoning Bd. of Rev. of City of Providence,103 R.I. 381, 387, 238 A.2d 353, 357 (1968), the Court held that, "the test to be derived from these cases [Viti and progeny] of applications for relief from provisions of an ordinance that merely regulate the manner in which a permitted use may be utilized is whether a literal enforcement thereof would have an effect so adverse as to preclude the full enjoyment of the permitted use." Therefore, the proper inquiry here is whether Appellants would be able to have full enjoyment of an accessory residential structure without obtaining the requested variance.
The substantial, reliable, and probative evidence of the entire record conclusively demonstrates that Appellants cannot fully enjoy the permitted use of an accessory residential structure without obtaining the requested variance. Specifically, Appellants proved that, because of the sloped topography of their property, an accessory residential structure can only be located either in the garage or in front of the bedroom windows of the main house. There is not a scintilla of evidence to contradict this factual conclusion, and the Board has not suggested otherwise. The Travers case cited above stands for the proposition that the denial of a variance may deny a property owner full enjoyment of a permitted use where the property owner would have to erect a structure in a new, nonsensical location instead of using the location of an existing structure. 101 R.I. 510, 514-15, 225 A.2d 222, 224-25. In that case, the denial of the requested variance would have required a garage to be built in the yard instead of replacing an existing garage.Id. Here, the denial of the variance would require an accessory residential *Page 16 
structure to be built in front of Appellants' bedroom window instead of inside an existing garage. By analogy to Travers, the denial of Appellants' requested variance denies Appellants from fully enjoying an accessory residential structure and, therefore, constitutes more than a mere inconvenience. See id. The Board erred in finding otherwise and denying Appellants' request. Accordingly, the Board's 2004 Decision is reversed, and Appellants' request for a dimensional variance is granted.
 Conclusion
In its 2004 Decision under review here, the Board inappropriately relied on a condition imposed in the Board's 1998 Decision. To recap this Court's holdings on the Board's three theories regarding the application of the 1998 Decision: (1) the 1998 Decision did not bar the Appellants' 2003 application under the doctrine of administrative finality; (2) the 2003 application and this appeal of the 2004 Decision are not untimely de facto appeals of the 1998 Decision; and (3) the Appellants' failure to appeal the 1998 Decision did not constitute a self-created hardship. Because the Board inappropriately relied on the 1998 Decision, its 2004 Decision is affected by error of law. Because the reliable, probative, and substantial evidence of the whole record demonstrates that Appellants are entitled to the requested dimensional variance, the Board's decision was arbitrary and substantially prejudiced Appellants. Accordingly, this Court now reverses the Board's decision and grants Appellants' request for dimensional relief.
Counsel for Appellants shall submit an order within ten days.
[1] Although the parties have not briefed the issue, it is clear that collateral estoppel does not apply here. "Under the doctrine of collateral estoppel, an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings." Foster-Glocester RegionalSchool Committee v. Board of Review, 854 A.2d 1008, 1014 (R.I. 2004). Here, the issue of an accessory residential structure was not actually litigated in the proceedings on the 1997 application. Instead, Appellant Leonard Perfido was "[v]ery surprised" by the Board's inclusion of that issue in its 1998 Decision "[b]ecause . . . it was not something that was part of what I had asked for nor was it part of the hearing and I never prepared for that issue." (Tr. at 16.) Therefore, because the issue of an accessory residential structure was not actually litigated in the proceedings on the 1997 application, collateral estoppel does not apply here. See Foster-Glocester, 854 A.2d at 1014.